UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :           14 Cr. 342 (RMB)
        - against -                               :           18 Cv. 9183 (RMB)
                                                   :
JOSEPH DEL VALLE,                                  :           **DECISION & ORDER**
                           Defendant.         :
-------------------------------------------------------------x

      On October 3, 2018, Joseph Del Valle filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence based upon alleged "ineffective assistance of counsel." Oct. 3, 2018 Habeas Pet. at 1. Del Valle contends that: (1) his attorney, Peter Tomao, pressured him to plead guilty and he "only [gave into the pressure] because . . . serious health issues affecting [his] family members as well as [his own] drinking problem had taken a heavy toll on [his] mental health, and [he] was not able to think clearly at the time of the guilty plea." Id. at 7, 23-29; and (2) "It was [his] understanding that [he] would be able to challenge the loss amount," however, "shortly before sentencing [counsel] withdrew [defense] sentencing [objections], leaving [Del Valle] with no chance to argue for a lower sentence." Id. at 8.

      On December 28, 2018, the Government filed its opposition. The Government (persuasively) points out that: (1) "Del Valle stated—under oath—that no one, including his lawyer, pressured him to change his plea." Dec. 28, 2018 Gov't Opp. at 15; and (2) "Del Valle's decision to withdraw his objections was entirely voluntary, as Del Valle himself confirmed, under oath and repeatedly, before this Court." Id. at 16.

**For the reasons stated below, Del Valle's petition is respectfully denied.[1]**

**I.    Background**

      On June 10, 2015, Del Valle was charged in a superseding indictment with (i) one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; (ii) two counts of wire fraud in violation

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision & Order have been considered by the Court and rejected.**

1

of 18 U.S.C. § 1343; and (iii) one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. See June 10, 2015 Indictment. The Indictment alleged that Del Valle "owned and managed several companies . . . which were created for various investment projects" and that he solicited investors based upon "representations that their investments would be used for [these] project[s]." Id. at 1, 18. Del Valle and his co-conspirator, in fact, "us[ed] the funds for other purposes, including . . . Del Valle's personal use." Id. at 5. "In total, . . . Del Valle and [his co-conspirator] used over $3,000,000 of that money for investments and expenditures unrelated to [the described investment projects], including more than $1,000,000 for use by Del Valle on personal items." Id.

On February 8, 2016, Del Valle pleaded guilty, after receiving a *Pimentel* letter from the Government dated February 2, 2016, to all four counts of the Indictment. See Feb. 8, 2016 Plea Hr'g Tr.; see also Dec. 28, 2018 Gov't Opp. at 6. On July 13, 2016, Del Valle was sentenced to 98 months' imprisonment and 5 years of supervised release. See July 13, 2016 Sentencing Tr. at 103:14-24. His offense level was 26; his criminal history category was II; and his Sentencing Guidelines range was 94 to 111 months. June 1, 2016 PSR ¶ 8.

On July 19, 2016, Del Valle filed an appeal of his sentence to the Second Circuit Court of Appeals, in which he did "not challenge his conviction; his only argument on appeal [was] that his 98-month sentence [was] substantively unreasonable." *See United States v. Del Valle*, 701 F. App'x 25, 25 (2d Cir. 2017); see also July 19, 2016 Notice of Appeal. The Court of Appeals affirmed Del Valle's sentence stating: "[i]n light of the magnitude of Del Valle's fraud, the devious means he employed to bilk his victims, and other factors mentioned by the district court, we cannot say that Del Valle's sentence was outside the 'range of permissible decisions.'" *See Del Valle*, 701 F. App'x at 26.

## II.  Legal Standard

"[A] claim [of ineffectiveness] does not arise unless a lawyer's error is so egregious as to amount to a failure to provide even minimal professional representation." *Valencia v. United States*, 2010 WL 743034, at *2 (S.D.N.Y. Mar. 4, 2010) (citing *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006)).

"Surmounting *Strickland*'s high bar is never an easy task" and "[d]ecisions by criminal defense counsel . . . are only rarely shown to [meet the *Strickland* ineffectiveness standard]." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citation omitted); *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010). "To establish ineffectiveness under *Strickland*, the defendant must show (1) that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense." *Loliscio v. Goord*, 263 F.3d 178, 192 (2d Cir. 2001) (citation and quotation marks omitted).

"*[P]ro se* submissions must be construed liberally and interpreted to raise the strongest arguments that they suggest." *United States v. Akinrosotu*, 637 F.3d 165, 167 (2d Cir. 2011) (citation omitted).

## III. Analysis

The record overwhelmingly shows that defense counsel was not ineffective. Among other things, Del Valle stated under oath that: his mental and physical health were good and he was not under the influence of anything that "that might cloud [his] answers" to the Court's questions at his plea; he had discussed "all aspects of the case" with Mr. Tomao, including the charges in the Indictment; he understood the "consequences of pleading guilty"; no one had "forced" him to plead guilty; and, he was "fully satisfied" with Mr. Tomao's representation of him and with Mr. Tomao's legal advice. See, e.g., Feb. 8, 2016 Advice of Rights Form; Feb. 8, 2016 Plea Hr'g Tr.[2]

At every stage of the proceedings (written and oral), Del Valle demonstrated that his guilty plea was "knowing, voluntary, and intelligent." See, e.g., Feb. 8, 2016 Plea Hr'g Tr. At sentencing, he confirmed that he was "withdraw[ing] his objections to the pre-sentence report" and that he agreed with the loss amount calculated by the Probation Office. See July 13, 2016 Sentencing Tr. at 2:24-4:6.

### (1) Knowing, Voluntary, and Unforced Admissions of Del Valle's Guilt

#### Arraignment Proceedings

On May 29, 2014, Del Valle acknowledged the content of the Indictment, dated May 22, 2014:

---

[2] Del Valle also specifically affirmed that "the amount of loss [is] . . . $5,333,721." See July 13, 2016 Sentencing Tr. at 3:25-4:6.

3

> THE COURT: Okay. So let me ask defense counsel whether you have received a copy of the Indictment.
> MR. TOMAO: We have, your Honor.
> THE COURT: And have you discussed it with Mr. Del Valle?
> MR. TOMAO: Yes. I provided him with a copy. And I have discussed it with him. . . . He is prepared to meet these charges. See May 29, 2014 Arraignment Tr. at 2:7-13, 7:7-8.

On October 14, 2014, Del Valle acknowledged the content of the Superseding Indictment, dated October 1, 2014:

> THE COURT: For defense counsel and for Mr. Del Valle, Mr. Tomao, have you received a copy of this superseding indictment?
> MR. TOMAO: I have, your Honor.
> THE COURT: Have you gone over it with Mr. Del Valle?
> MR. TOMAO: I have, your Honor. See Oct. 14, 2014 Arraignment Tr. at 2:25-3:5.

On June 16, 2015, Del Valle acknowledged the content of the Superseding Indictment, dated June 10, 2015:

> THE COURT: [] [T]here has been, as you all know, a superseding indictment which adds a Count Four. We need to have an arraignment with respect to that Indictment. Let me first ask defense counsel if you have seen a copy of that Indictment.
> MR. TOMAO: I have, your Honor.
> THE COURT: Have you discussed it fully with Mr. Del Valle?
> MR. TOMAO: I have, your Honor. See June 16, 2015 Arraignment Tr. at 2:2-10.

**Advice of Rights Form & Pimentel Letter**

In advance of Del Valle's plea, Del Valle and Mr. Tomao jointly executed and submitted to the Court a document entitled "Advice of Rights," dated February 8, 2016. The document is utilized by the Court to help ensure that the defendants understand the implications of pleading guilty. See Feb. 8, 2016 Plea Hr'g Tr. at 2:10-11, 3:1-4. Mr. Del Valle's Advice of Rights form acknowledges the following:

> "I have received and read a copy of the Indictment . . . and understand the nature of the charges made against me. I have told my attorney all I know about the matters referred to in the Indictment." See Feb. 8, 2016 Advice of Rights Form at 1.

> "My attorney has explained to me the nature of the charges against me, my constitutional rights, and the punishment that could be imposed by the Court upon my plea of guilty." Id.

> "My decision to plead guilty is freely and voluntarily made. I have not been induced to plead guilty to any count by any promises . . . or by any statement that I would receive leniency, a lesser sentence, or any other consideration if I pleaded guilty instead of going to trial. I have not been induced to plead guilty by any force, coercion, pressure or fear." Id.

> "I am pleading guilty because after discussing the case with my attorney I believe that I am guilty. I am satisfied with how my attorney has represented me." Id.

4

"My attorney has advised me that he does not believe that there are any meritorious defenses to the count or counts to which I am pleading guilty." Id. at 2.

"I am not under the influence of any substance, such as medication, narcotics or alcohol, that would affect my ability to understand the nature and consequences of my action in pleading guilty." Id.

"I [Mr. Tomao], the attorney for the above-named defendant, have reviewed the foregoing with him, have explained to him the nature of the charges against him, his constitutional rights, and the punishment that could be imposed upon his guilty plea." Id.

After executing and submitting the Advice of Rights form to the Court on February 8, 2016, Mr. Tomao and Del Valle stated the following under oath:

> THE COURT: I have received a copy of what we call the advice of rights form signed by defense counsel and Mr. Del Valle. I just want to make sure that counsel and Mr. Del Valle have each read it carefully before they signed it.
> MR. TOMAO: Yes, your Honor. In fact, I think we initialed the front page as well as signed it.
> THE COURT: Mr. Del Valle, you went over that document carefully with your attorney? It discusses some of the implications of pleading guilty.
> THE DEFENDANT: Yes, your Honor. See Feb. 8, 2016 Plea Hr'g Tr. at 2:2-12.

> THE COURT: There's also a [*Pimentel*] letter here from the Government to defense counsel. . . . dated February 2, 2016. It is an estimate by the government of what the government believes Mr. Del Valle's sentencing guidelines range would be following a guilty plea. Have you reviewed that letter with Mr. Del Valle as well?
> MR. TOMAO: Yes, I did, your Honor. I had him initial it for my file.
> THE COURT: Mr. Del Valle, you have gone over that letter also with your attorney to your satisfaction.
> THE DEFENDANT: Yes, your Honor. Id. at 3:6-17.

In *McFadden v. United States*, 1995 WL 81317 (S.D.N.Y. Feb. 28, 1995), the court rejected a habeas petitioner's claim of "ineffective assistance of counsel after [his guilty] plea." Id. at *1. The court found that: "[petitioner] understood the nature of the charge . . . [h]e reviewed an advice of rights form with his lawyer before he entered his plea and understood it, and acknowledged specifically that he had had enough time to discuss the case with his lawyer and was satisfied with that lawyer's representation." Id.

**Plea Allocution**

At his plea allocution on February 8, 2016, Del Valle gave the following testimony:

> THE COURT: So it's pretty clear from what we have said so far in these documents that Mr. Del Valle wishes to change his plea to the indictment in this case . . . from not guilty to guilty. Is that a correct understanding of the proceeding here today?

5

MR. TOMAO: Yes, your Honor.
THE COURT: That is what you are intending to do Mr. Del Valle?
THE DEFENDANT: Yes, your Honor. See Feb. 8, 2016 Plea Hr'g Tr. at 3:18-4:2.

THE COURT: Before I accept your guilty plea, I am going to ask you a series of questions so that I can establish my satisfaction that you do in fact wish to plead guilty and that you do so voluntarily and knowingly and because you are guilty and also to establish that you know just what rights you will be giving up by pleading guilty. . . .
THE COURT: Are you taking medication?
THE DEFENDANT: No.
THE COURT: [] Are you seeing a mental health physician?
THE DEFENDANT: No, your Honor.
THE COURT: How is your health today, your physical health?
THE DEFENDANT: Physical health is OK.
THE COURT: And mental health?
THE DEFENDANT: Good. Id. at 4:3-8, 5:10-19.

THE COURT: So I am going to ask you **again** how you feel today physically?
THE DEFENDANT: Today physically I feel OK.
THE COURT: And mentally?
THE DEFENDANT: Good.
THE COURT: You understand what is happening here in court today?
THE DEFENDANT: Yes your Honor. Id. at 6:24-7:6 (emphasis added).

THE COURT: Have you taken, Mr. Del Valle, any medicine, pills or drugs or drunk any alcoholic beverages in the past 24 hours?
THE DEFENDANT: No, your Honor.
THE COURT: Anything that might cloud your answers to or affect your answers to any questions?
THE DEFENDANT: No, your Honor. Id. at 6:17-23.

THE COURT: Have you ever been addicted to drugs or to alcohol?
THE DEFENDANT: No, your Honor.
THE COURT: Ever been hospitalized or treated for any addiction?
THE DEFENDANT: No, your Honor. Id. at 5:20-25.

THE COURT: Have you received a copy of the indictment in this case, which contains the charges against you?
THE DEFENDANT: I have, your Honor.
THE COURT: Have you discussed with your attorney those charges to which you intend to plead guilty today?
THE DEFENDANT: I have, your Honor. Id. at 11:1-6.

THE COURT: [] Mr. Del Valle, have you had a full opportunity to discuss all aspects of this case with your attorney?
THE DEFENDANT: I have, your Honor.
THE COURT: Have you discussed with him all possible defenses that you might have to the charges set forth in the indictment?
THE DEFENDANT: I have, your Honor. Id. at 7:15-22.

6

THE COURT: Has anyone threatened you or in any way forced you to plead guilty?
THE DEFENDANT: No, your Honor.
THE COURT: Including your counsel?
THE DEFENDANT: No, your Honor. Id. at 20:6-10.

THE COURT: Has anybody made any promise or inducement to cause you to plead guilty today?
THE DEFENDANT: No, your Honor.
THE COURT: Has anybody made any promise to you as to what sentence you will receive?
THE DEFENDANT: No, your Honor.
THE COURT: Including any attorneys?
THE DEFENDANT: No, your Honor. Id. at 22:18-25.

**Satisfaction with Counsel's Legal Advice**

THE COURT: Are you fully satisfied with defense counsel's legal representation of you?
THE DEFENDANT: I am, your Honor.
THE COURT: And are you fully satisfied with the advice that he has given you, the legal advice that he's given you?
THE DEFENDANT: I am, your Honor. Id. at 7:23-8:4.

THE COURT: I know I asked this before but I will ask it again: Are you fully satisfied with Mr. Tomao's legal representation of you?
THE DEFENDANT: I am, your Honor.
THE COURT: Are you fully satisfied with his legal advice to you?
THE DEFENDANT: I am, your Honor. Id. at 11:7-13.

**The Government Describes the Evidence Against Del Valle**

THE COURT: So, [AUSA] Hector, could you tell us in summary form what the government would be able to prove if this case were to go trial instead of being resolved?
Ms. HECTOR: Yes, your Honor. The evidence would show that from at least in or about 2005 through in or about June 2009, Mr. Del Valle engaged in a scheme to make materially false representations to investors in order to induce those investors to fund a real estate development project called Project Miami, misappropriated portions of those investors' funds for his own use, and sent electronic communications to those investors giving false assurance about the safety of their investments . . . .

The evidence would also show that from in or about 2009 through in or about 2014, Mr. Del Valle solicited investors to wire money to various bank accounts on the basis of materially false and misleading representations that their money would be used for investment projects in the restaurant, wine, and hotel industries; made materially false and misleading representations and omissions to investors about the status of the investment projects; sent investors fake electronic communications purportedly from people involved in the projects; and misappropriated investor funds for his own use. . . .

The evidence at trial would consist primarily of witness testimony, e-mail correspondence involving the defendant, bank records and other records of financial transactions, and business records. Id. at 23:1-24:4.

**Defendant Describes His Criminal Conduct in His Own Words**

THE COURT: Could you tell us [] for the record in your own words what it is that makes you believe that you are guilty of the four counts set forth in the indictment?
THE DEFENDANT: Beginning in 2005 I agreed with others to obtain monies from investors in connection with a housing development project in Miami.
**We did not disclose to all of the investors that the money they gave us was commingled with other moneys and used for the investments in addition to housing developments as well as for my personal expenses.**
I sent e-mails to the investors which did not disclose that some of the moneys had been used for purposes other than a housing development project. . . .
One of the e-mails which I sent was an e-mail dated June 20, 2009 to an investor . . . . I knew [that investor] was not aware that the money which he had invested had been commingled with other investors' investments and used as I've described above. I did not tell him that in the e-mail. . . .
I also obtained money from several investors in connection with other investment projects involved in the acquisition of restaurants, wineries, and high-end hotels. I used part of the money which I received from the investors for personal expenses. Id. at 25:2-26:12 (emphasis added).

THE COURT: I have a few questions. You understand that as to the matters set forth in Counts One, Two, Three and Four that they were violations of law. Is that right?
THE DEFENDANT: Yes, your Honor.
THE COURT: And you undertook those actions intentionally and knowingly, is that right?
THE DEFENDANT: Yes, your Honor.
THE COURT: [] I just want to make it clear that you sent these investors false and/or misleading -- or you made to these investors false and/or misleading representations?
THE DEFENDANT: Yes, your Honor. . . .
THE COURT: [] Are you pleading guilty to these four crimes, Mr. Del Valle, because you are, in fact, guilty of each of them?
THE DEFENDANT: Yes, your Honor. Id. at 27:2-22.

THE COURT: [] I just wanted to make sure that you have had a full conversation with Mr. Del Valle about the implications of pleading guilty.
MR. TOMAO: Yes, your Honor, I did. Id. at 3:2-5.

THE COURT: Do you think, Mr. Del Valle, that you understand the consequences of pleading guilty here today?
THE DEFENDANT: I do, your Honor. Id. at 20:3-5.[3]

In sum, "statements at a plea allocution carry a strong presumption of verity." *Palma v. United States*, 2008 WL 3539960, at *3 (S.D.N.Y. Aug. 12, 2008) (citation and alterations omitted). "[S]uch

---

[3] **Following Del Valle's testimony, the Court concluded: "that Mr. Del Valle is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges against him and the consequences of pleading guilty, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact."** See Feb. 8, 2016 Plea Hr'g Tr. at 28:4-10 (emphasis added).

statements are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Flemming v. New York*, 2009 WL 6325520, at *18 (S.D.N.Y. Aug. 10, 2009) (citation and quotation marks omitted); *Maldonado v. United States*, 2009 WL 1373859, at *5 (S.D.N.Y. May 18, 2009) ("The Court is entitled to rely on [petitioner's] [] statements during his plea allocution, given under oath [and] . . . express[ing] his satisfaction with [his attorney's] representation of him . . . . He [also] provided a sufficient narrative of his criminal conduct to support the plea of guilty . . . . [Petitioner] has not shown that [his attorney] provided ineffective assistance of counsel to him in connection with his plea."); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A review of the record indicates that [defendant's] plea was completely voluntary and knowing. During his plea, he was explicitly asked by the district court judge whether anyone forced him to accept this arrangement, to which he responded 'no'. . . . his unequivocal admissions under oath contradict his unsupported assertions of pressure[.]").

### Admissions of Guilt in Del Valle's Habeas Petition

As the Government correctly points out, "Del Valle freely (and repeatedly) acknowledges . . . that he was willing to plead guilty to making misrepresentations to investors." Dec. 28, 2018 Gov't Opp. at 17. Del Valle states: "I was willing to own up to the few actions I had in fact done in terms of misrepresentations to investors" and "I had always been willing to own up to the embellishments and other statements I had made to investors." See Oct. 3, 2018 Habeas Pet. at 24, 27.

In *Maldonado v. United States*, 2009 WL 1373859 (S.D.N.Y. May 18, 2009), the court rejected a petitioner's ineffective-assistance claim that he "wanted to profess his innocence in court by jury trial, but was coerced by his attorney to accept a guilty plea." *Id.* at *3 (citation and alterations omitted). The court noted that "[the] petition papers concede that he was guilty of participating in a narcotics conspiracy" and "[i]n these circumstances, [petitioner's] conclusory assertions of innocence and a desire to go to trial are unavailing." *Id.* at *5; *see also United States v. Walbrook*, 1993 WL 404065, at *1 & n.1 (S.D.N.Y. Oct. 1, 1993).

**Defense Counsel's Rebuttal of Del Valle's Petition**

On February 20, 2020, Mr. Tomao responded to Del Valle's allegations that he had been ineffective. Mr. Tomao states that he has "handled complex fraud and other economic cases throughout [his] career of more than 40 years," including as a trial attorney for the United States Department of Justice's Antitrust Division and as an Assistant U.S Attorney at the United States Attorney's Office for the Eastern District of New York. See Feb. 20, 2020 Tomao Ltr. at 2; see also Oct. 14, 2014 Arraignment Tr. at 15:19-20. "I fully investigated the case and prepared the case . . . as if it [were] going to proceed to trial because I am mindful of my professional obligations as a reasonably prudent lawyer." Feb. 20, 2020 Tomao Ltr. at 2. Specifically, "my staff and I spent hundreds of hours reviewing records, interviewing potential witnesses and otherwise preparing for trial," including "supervis[ing] forensic accounting and investigative experts." Id. at 3-4. "[I] engaged in zealous sentencing advocacy." Id. at 8. "I was always able to communicate efficiently with Mr. Del Valle . . . . We exchanged numerous emails and memoranda and spoke frequently by telephone." Id. at 6.

Mr. Tomao refutes Del Valle's claim that he had been forced to plead guilty. Mr. Tomao states that: "Del Valle admitted his guilt and . . . his plea was voluntary." Id. at 8. "Mr. Del Valle told [the Court] that no one had forced him to change his plea, including specifically, his counsel." Id. "[Del Valle] never questioned my competence to represent him. Indeed, . . . [Del Valle] repeatedly confirmed on the record that he was satisfied with my representation of him." Id. at 3, 8; see also discussion at p. 7, supra.

Mr. Tomao also refutes Del Valle's claim that Mr. Tomao "misled him into believing that he would be able to challenge the loss calculations." Feb. 20, 2020 Tomao Ltr. at 1; see also Section (2) below. "[Del Valle] alone [] ma[d]e the choice" to withdraw the objections after the Government advised the Court that "it would oppose any [sentence] reduction for acceptance of responsibility due to his objections." Feb. 20, 2020 Tomao Ltr. at 10. **"Based on Mr. Del Valle's decision not to pursue his objections to the [loss] calculations, the government agreed not to oppose a finding of acceptance of responsibility."** Id. (emphasis added). Mr. Tomao points out that "[w]ithout the three point reduction for acceptance of

10

responsibility[,] [t]he [Guidelines] range would have been 132 to 159 months," rather than 94 to 111 months. Id. at 8.

### (2) Del Valle Determined Not to Challenge Loss Amount

Del Valle contends that attorney Tomao had led him to believe "that [he] would be able to challenge the loss amount and finally be able to explain to the court the true nature of . . . [his] development deals" at sentencing. Oct. 3, 2018 Habeas Pet. at 8. He complains that "shortly before sentencing he withdrew my sentencing arguments, leaving me with no chance to argue for a lower sentence." Id.

Del Valle's argument concerning loss amount is unpersuasive. Attorney Tomao explains that "[he] did argue that much of the investors' money had, in fact, been used for legitimate purposes. . . . As a result, [he] [initially] disputed the . . . loss [amount]." Feb. 20, 2020 Tomao Ltr. at 9. However, on June 29, 2016, the Government submitted a letter to the Court "advis[ing] . . . that it would oppose any reduction for acceptance of responsibility due to [Del Valle's] objections to various portions of the PSR including the loss [amount]." Id. at 10; see also June 29, 2016 Gov't Ltr. at 5. "[W]ithout the three point reduction for acceptance of responsibility[,] [t]he [Sentencing Guidelines] range would have been 132 to 159 months," rather than 94 to 111 months. Feb. 20, 2020 Tomao Ltr. at 8. **"As a result [Mr. Tomao] advised [Del Valle] to withdraw his challenges, but at the same time, [Mr. Tomao] made it clear to him that [Del Valle] alone would make the choice."** Id. at 10 (emphasis added). **"On the record [at the July 13, 2016 sentencing proceeding], Mr. Del Valle expressly stated that he agreed with the decision to withdraw the objections."** Id. (emphasis added).

The record supports Mr. Tomao's assertions. Mr. Tomao submitted an 18-page sentencing submission on May 13, 2016 which addressed Del Valle's objections to the PSR's findings, "including the amount of loss, the number of victims, . . . and [Del Valle's alleged] abuse of trust." July 13, 2016 Sentencing Tr. at 2:12-15; May 13, 2016 Pet'r Sentencing Submission at 12. And, Mr. Tomao was prepared to contest these findings at a scheduled July 13, 2016 evidentiary hearing. Feb. 20, 2020 Tomao Ltr. at 10-11. As noted, Del Valle withdrew his objections after Mr. Tomao "advised [Del Valle] that by pursuing his

11

challenges to the loss calculations, he bore the risk that the Court might determine that he was not accepting responsibility and . . . . [t]his could increase his guideline range to as much as 132 to 159 months." Id. at 10.

"Mr. Del Valle expressly stated that he agreed with the decision to withdraw the objections . . . on the day before the scheduled hearing." Id. In fact, "Del Valle sent [Mr. Tomao] an email authorizing [him] to withdraw his objections and proceed with sentencing." Id. And, the defense sent a letter to the Court on July 12, 2016 stating: **"We write to advise the court that . . . Joseph Del Valle [] withdraws his objections to the Pre-Sentence Report."** See July 12, 2016 Ltr. at 1 (emphasis added).

Moreover, at the July 13, 2016 proceeding, the Court specifically questioned Del Valle as follows:

THE COURT: [] Mr. Tomao, have you and Mr. Del Valle had the opportunity to read and discuss all of the[] materials, and in particular the pre-sentence investigation report, including its addendum and sentencing recommendation?
MR.TOMAO: Yes, your Honor.
THE COURT: Mr. Del Valle?
THE DEFENDANT: Yes, your Honor. See July 13, 2016 Sentencing Tr. at 18:5-11.

THE COURT: [] [T]he pre-sentence report calculated an offense level of 26 . . . . Thus, the guideline range comes to 94 to 111 months of incarceration based also on a criminal history category of II. **Does your letter withdrawing the objections mean that the defense agrees with these calculations? . . . Is that your understanding [] Mr. Del Valle?**
**THE DEFENDANT: Yes, your Honor.**
THE COURT: [] [T]he pre-sentence report calculated a loss amount of $5,333,721. Is the import of your letter or one import of your letter . . . that the defense agrees that that is the amount of loss? . . .
THE DEFENDANT: Yes, your Honor. Id. at 3:12-4:6 (emphasis added).

In *Chestnut v. United States*, 2018 WL 1989617 (S.D.N.Y. Jan. 19, 2018), the court found that "challenging the amount of loss calculation . . . [would] leav[e] the prosecution free to seek a substantially higher Sentencing Guidelines calculation as reflected in [petitioner's] PSR. Counsel could not be found ineffective for failing to expose [petitioner] to a considerably higher sentence." *Id.* at *5; *see also Pinhasov v. United States*, 2018 WL 550611 (S.D.N.Y. Jan. 22, 2018), in which "[petitioner] answered in the affirmative when the Court asked whether he 'agreed [] with the government' that the loss amount 'is at least a million or more than a million but less than 2.5 million.' As such, he cannot demonstrate prejudice based on his attorney's actions with regard to the loss amount calculation." *Id.* at *4 (citation omitted).

12

**Appointment of Counsel**

The Court rejects Del Valle's request that an attorney be assigned to assist him with respect to this petition. <u>Oct. 3, 2018 Habeas Pet.</u> at 2. The threshold consideration in ruling on such an application is the showing of "some merit." *See Quail v. Farrell*, 550 F. Supp. 2d 470, 480 (S.D.N.Y. 2008) (quoting *United States v. Yousef*, 395 F.3d 76, 77 (2d Cir. 2005)). Del Valle's claim of ineffective assistance of counsel has no merit. Accordingly, his application for appointment of counsel is denied. *Quail*, 550 F. Supp. 2d at 481.

## IV. Conclusion & Order

For the reasons set forth above, Del Valle's petition for a writ of habeas corpus and request for appointment of counsel [#211 in 14-cr-342 and #1 in 18-cv-9183] are denied. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
February 11, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**